**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2946-24

FIRST BANK,

    Plaintiff-Appellant,

v.

GREENBAUM, ROWE, SMITH & DAVIS, LLP and CHARLES J. WILKES,

    Defendants/Third-Party Plaintiffs-Respondents,

v.

MICHAEL F. ALBANESE, CPA d/b/a COST REDUCTION SOLUTIONS, and ABC CORP. 1 a/k/a COST REDUCTION SOLUTIONS,

    Third-Party Defendants,

and

SCHILLER, PITTENGER & GALVIN, PC,

    Third-Party Defendant-

Respondent.

Argued May 6, 2026 – Decided August 3, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0128-21.

Paul J. Maselli argued the cause for appellant (Maselli, Mills & Fornal, PC, attorneys; Paul J. Maselli, of counsel and on the briefs; Liza Sherman, on the briefs).

Brian J. Molloy argued the cause for respondents Greenbaum, Rowe, Smith & Davis, LLP and Charles J. Wilkes (Wilentz, Goldman & Spitzer, attorneys; Brian J. Molloy and Samantha J. Stillo, of counsel and on the brief).

McElroy Deutsch Mulvaney & Carpenter LLP, attorneys for respondent Schiller, Pittenger & Galvin, PC, join in the brief of respondents Greenbaum, Rowe, Smith & Davis, LLP and Charles J. Wilkes.

PER CURIAM

In this legal malpractice case, we consider whether the trial court abused its discretion in striking plaintiff's expert report, resulting in the dismissal of the complaint. Because we conclude the expert report complied with N.J.R.E. 702 and defendants' arguments go towards the weight of the evidence regarding the report and subsequent expert testimony rather than its admissibility and conformance with evidential requirements, we reverse.

A-2946-24

I.

In April 2019, Carmine DeMaio, President and Principal of CTE-1 LLC, applied for a $6 million loan from plaintiff. CTE-1 LLC operated a Lexus franchise known as Lexus of Englewood (LOE). DeMaio represented he intended to use the money to buy out his business partner's minority ownership interest.

The collateral to secure the loan included (1) a lien on unencumbered vehicles alleged to be worth $4.5 million; (2) a second mortgage on DeMaio's personal residence; and (3) a second mortgage on a commercial property, Volkswagen of Union dealership.[1]

The terms of the loan required CTE-1 to transfer the vehicle inventory to AUA Englewood LLC upon which plaintiff would be given a security interest in the vehicle inventory titled to AUA. Plaintiff also obtained personal guarantees from DeMaio and another individual.

---

[1] This dealership was owned by CTE-2 Land LLC, also operated by DeMaio.

A-2946-24

Plaintiff's Board of Directors approved the loan in early July 2019. Later that month, plaintiff retained defendants Greenbaum, Rowe, Smith & Davis, LLP to close the loan.[2] The closing took place on August 14, 2019.

In October 2019, Toyota Motor Credit Corporation, who had two existing liens against CTE-1's inventory and assets, discovered that CTE-1 was "out of trust" on their floor plan line, meaning DeMaio had sold vehicles without advising Toyota and remitting payment. Toyota filed suit in federal court against CTE-1 and CTE-1 subsequently filed for bankruptcy and defaulted on plaintiff's loan.

During this litigation, plaintiff's representative David DeStefano testified DeMaio had: (1) provided plaintiff with false financials concerning CTE-1 and himself; (2) misrepresented the amount of encumbrance on the CTE-2 Land commercial property; (3) provided falsified inventory reports post-closing asserting he owned unencumbered cars with a value of $4.5 million; (4) misappropriated use of plaintiff's loan proceeds outside of what was contemplated by the parties; and (5) represented to plaintiff he could pledge vehicles outside of the floor plan.

---

[2] Defendant Charles J. Wilkes was an attorney at the Greenbaum firm and worked on this matter. We refer to the firm and counsel collectively as defendants.

A-2946-24

II.

In 2021, plaintiff filed a legal malpractice complaint against defendants, alleging they failed to meet the standard of care in their representation of plaintiff, which proximately resulted in plaintiff incurring damages. The discovery end date was extended numerous times over the next two years.

Plaintiff served an expert report prepared by Martin J. Jennings, Esq., LLM. Jennings advised he was "retained to express [his] opinion regarding the conduct of Wilkes and Greenbaum as it relates to their representation of First Bank in the Loan transaction." The report detailed the circumstances regarding the loan and its terms and plaintiff's collection efforts. Jennings set forth the applicable standard of care, presented his opinions of defendants' breach of their duty to plaintiff and addressed the proximate cause of defendants' actions to plaintiff's damages.

Defendants deposed Jennings regarding his report, opinions and conclusions. Thereafter, defendants moved to strike Jennings' report and bar his testimony. During oral argument on the motion, defendants' counsel stated "[t]his motion seeks to prevent an expert from testifying about an implied duty of a closing attorney to prevent a fraud." Counsel continued, "[t]his is a motion to bar Martin Jennings, plaintiff's liability expert, from testifying that . . .

A-2946-24

defendants had a duty to prevent a fraud by the principal and the principal and the borrower, Carmine DeMaio." Counsel described the "alleged duty to prevent a fraud" as "the centerpiece of Mr. Jennings' report" and opinion. Counsel stated, "this [was] not a strict net opinion case" but "something much more." In finishing his initial argument, defendants' counsel stated the court had to determine "whether there is a duty, implied duty, to prevent a fraud." Counsel reiterated at the end of arguments that "[t]he driving force of the Jennings report is the implied duty to prevent a fraud." In sum, defendants urged the court to strike the report because this court, in Grubbs v. Knoll, 376 N.J. Super. 420, 439 (App. Div. 2005), stated an attorney does not have an affirmative duty to detect fraudulent conduct by a party in a loan transaction unless the attorney expressly agrees to do so.

The court granted defendants' motion to strike the Jennings report in an oral decision, stating:

> This is a motion by defendants . . . to bar the expert report and expert testimony in trial of Mr. Jennings, who is the expert retained by plaintiff[] in this case. For the reasons that follow, the [c]ourt shall grant the motion and bar Mr. Jennings' testimony and his opinions expressed in his report.
>
> The [c]ourt is mindful of the distinction between a motion for summary judgment, which the existence of any . . . genuine material facts, would preclude the

6

granting of summary judgment, and . . . lead to the issue of whether any reasonable jury would find otherwise.

And again, . . . the [c]ourt will agree that . . . the argument . . . is basically heightened above a motion to bar . . . and it does deal with legal standards. And so there is sort of an overlap in terms of the motion record as written into the motion. But, this is not a summary judgment motion, and it's just a matter of whether or not Mr. Jennings' report is properly barred.

What is—what has been agreed to in the papers and from this oral argument is that . . . there's an agreement that there is no expressed duty of [defendants] to sort of ferret out the fraud. There's nothing in a retainer agreement that imposes that duty, and again, it's undisputed that it's not based on any expressed obligation.

And really, the [c]ourt . . . agrees with [defendants'] characterization that this all rises or falls based upon an implied duty to discover fraud. And likewise agrees that when you're dealing with the standard of care rising out of [that] legal obligation, it is an issue for the [c]ourt to pass on. And it is—and, again, certainly in terms of (indiscernible) within the rules . . . parties can argue for good faith extension of the law.

This is more than that. . . . [W]hat is contained in the Jennings report and really confirmed by the deposition of Mr. Jennings, is seeking to come back and—the [c]ourt agrees that this, with the [defendants'] characterization that this really is an implied duty or a backstop if you can go there to the lawyer if you're unable to go after the seller.

And the [c]ourt also finds that [Grubbs, 376 N.J. Super. at 438, a 2005 Appellate Division decision that remains good law, is applicable] . . . . The quote dealing with backstop theory is at [p]age 438 . . . . And it just says that there's no implied obligation in a residential real estate—that was residential, but still in a real estate closing where the attorneys have an affirmative duty to define and discover fraud.

The motion record here indicates that despite the fact that Mr. Jennings . . . cannot point to any legal standard in New Jersey, that nonetheless there is evidence in the record that [defendants] did make some recommendations and, again, plaintiff refers to them as speculative, what ifs, we won't know, meaning that it is speculation in a way, but it also indicates that it doesn't even take into consideration what . . . defendants did without having an affirmative obligation, and . . . [plaintiff] clearly decided to go forward.

And . . . we're sort of quibbling over what Mr. DeMaio [said] and what his representations were. Did they satisfy the legal requirements for fraud or . . . was there detrimental reliance? Those points are well taken, but in the great scheme of things, regardless of whether it qualifies as common law fraud or some other . . . theory . . . there's really no question in this motion record that they were false. They were misrepresentations, false representations, what have you. There clearly was some wrongful conduct on Mr. DeMaio's part. It wasn't a matter of . . . giving a guesstimate that turned out to be inaccurate or something that could be sort of explained away.

And so, it is clear from Mr. Jennings' own writing and deposition testimony, that [he] can't identify any expressed obligation . . . on [defendants]. And

A-2946-24

moreover, can't identify . . . any negligent work by [defendants] in reviewing the documents. . . .

Mr. Jennings cannot identify the standard of care. The best he comes is, he cites an unauthorized [practice] of law, which is not binding upon this [c]ourt. And cites case law in Louisiana and other jurisdictions.

Now, again, the [c]ourt is . . . mindful that there can be requests of good faith extensions to the law, but the [c]ourt finds that this report is really seeking to impose a standard of care that's really made out of whole cloth. And it is . . . significant that Appellate Courts in this state have dealt with this issue before and . . . not only have not recognized it, they essentially have rejected it. And the [c]ourt finds nothing in Mr. Jennings' report that would provide a basis to cobble together this particular legal theory.

. . . [T]here's an agreement that . . . what caused the loss to . . . [plaintiff] is the failure to [ascertain] the collateral. And while Mr. Jennings seeks to impose that duty through what he argues as a standard of care for [defendants], there's really no dispute here that . . . [plaintiff] was relying on CRS [(Cost Reduction Services)] to deal with those issues.

And again, Mr. DeMaio, just as a side note, Mr. DeMaio himself took the Fifth Amendment. And while Jennings can argue that there was no fraud on DeMaio's part, again, perhaps in terms of [what] we're [assessing] Mr. DeMaio's liability and what standard that applies. . . . [I]t breaches a standard of care on the part of . . . [plaintiff's] lawyers here.

And in addition to that fundamental flaw which the [c]ourt finds it's itself determined to grant the motion to bar, the [c]ourt also agrees with the additional

A-2946-24

arguments of . . . defendants that Mr. Jennings' report and testimony would be barred by [N.J.R.E.] 403 and 702. With respect to [N.J.R.E.] 403 and in terms of the [State v. Townsend, 186 N.J. 473, 494 (2006)] authority cited by . . . defendants, there has to be a factual basis for the expert's opinion, and the [c]ourt finds that there is not proof, [and] that it's strictly a factual basis theory.

There are arguments that . . . plaintiff argues that . . . defendants require the [c]ourt to engage in speculation, but the opposite is true as well, that the expert can engage in speculation. And a [c]ourt doesn't find that there's a factual basis under the evidence rules here.

Likewise, with respect to [N.J.R.E.] 702 . . . [the court] agree[s] with [defendants'] argument that this goes beyond a typical net opinion argument, that the expert opinions ha[ve] to be more than the expert's personal opinion. And the [c]ourt finds that, essentially, we're dealing with personal opinions here when there's a lack of a legal standard, which the [c]ourt can consider in considering this particular application.

Again, there is the issue of a quote in the expert's report that . . . it purportedly quotes language from a case where that particular language, at best, is some kind of, I guess, paraphrasing, but the quote does not exist. Counsel has asked for supplemental briefing on this point. However, that quote was prominently identified in the papers, and moreover, the [c]ourt finds that it's not at issue while very serious, is taken seriously, is not determinative of the [c]ourt's decision in this case.

And, further, this is not something where any . . . defects or weaknesses in the expert's opinion that . . .

10

defendants can deal with them soon through cross examination. . . . [I]f there's this fundamental problem with the expert opinion, it's not something where there's not a basis for the [c]ourt to just say, oh, well, work it out in cross examination and let the jury decide. Again, this is not a summary judgment motion. This is . . . whether or not the expert's opinion can stand.

And again, this . . . motion was not made until the expert was . . . deposed. And it made a number of concessions that really further bolstered . . . [defendants'] arguments in this case.

And again, . . . these may not necessarily be determinative, but it is significant that [defendants] offered some suggestions that could have prevented—well, let's call it malfeasance if we don't want to talk about it as fraud under the legal standard for fraud[—]suggestions that were not taken up that were actually rejected by . . . [plaintiff]. The fact that it's . . . rather empothetical [sic] to argue that [defendants] had an affirmative duty that ferreted out the failure [of the] collateral when it's clear that . . . [plaintiff] referred . . . that issue to CRS, which they hired and relied upon.

And, you know, because the presentation for approval that was explicitly assigned to CRS, and regardless of how one characterizes it, it's clear that in terms of standard that Mr. DeMaio lied or made significant misrepresentations, regardless or whether or not that would . . . satisfy certain legal definitions of fraud. And, essentially, Mr. Jennings is finding that regardless of that, [defendants] should have . . . discovered that.

For all of these reasons, the [c]ourt shall grant the motion to bar Mr. Jennings' testimony and report.

11

[(Citations reformatted).]

The court entered a memorializing written order on December 2, 2024.

After the trial court rendered its oral opinion, plaintiff requested the court extend the discovery end date (DED) so it could revise or supplement its expert report since defendants' motion to bar was originally returnable before the DED expired. The court denied plaintiff's request.

Thereafter, defendants moved to dismiss plaintiff's complaint with prejudice. Plaintiff cross-moved for reconsideration of the December 2, 2024 order, and sought to extend the DED.

On May 7, 2025, the trial court (1) denied plaintiff's cross-motion for reconsideration of the December 2, 2024 order; (2) denied plaintiff's motion to extend the DED; and (3) granted defendants' motion to dismiss plaintiff's complaint with prejudice, pursuant to Rule 4:6-2(e). In its written statement of reasons, the trial court stated:

> Here, [p]laintiff has no expert to cite the applicable standard of care which [d]efendants owed to [p]laintiff, as [p]laintiff's sole expert, Mr. Jennings, has been barred. Therefore, per Buchanan v. Leonard, 428 N.J. Super. 277, 288 (App. Div. 2012), and as [p]laintiff has conceded in its moving papers, without an expert to opine on [d]efendants' duty of care, [p]laintiff is unable to maintain a legal malpractice claim.
>
> [(Citations reformatted).]

12

Thereafter, defendants and the third-party defendants stipulated to the dismissal of the third-party complaint.

III.

On appeal, plaintiff contends the court erred in barring its expert's report because the Jennings report satisfied the standard for the admissibility of expert testimony and Grubbs is irrelevant to the issues presented here. In addition, plaintiff asserts the court erred in denying its motion to extend the DED.

We review a trial court's discovery ruling under the abuse of discretion standard. Brugaletta v. Garcia, 234 N.J. 225, 240 (2018). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

Plaintiff contends the Jennings report met the criteria required for the admission of expert testimony under N.J.R.E. 702. We agree.

Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

13

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

Our Supreme Court has advised that Rule 702

> imposes three basic requirements: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony."
>
> [Kemp ex rel. Wright v. State, 174 N.J. 412, 424 (2002) (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 413 (1992)).]

Defendants did not address these requirements in their motion to bar the report. There was no contention that expert testimony was not needed to aid the jury, indeed, defendants also procured an expert to provide opinion testimony. In addition, there was no assertion that Jennings was not qualified to provide expert opinion.[3] Moreover, defendants' counsel was clear before the trial court that the motion was not grounded in an argument that the report was net opinion. We note, despite these comments to the trial court, defendants now argue on appeal the report was "net personal opinion."

---

[3] Jennings' report and resume reflect he had been practicing law for thirty-nine years, "concentra[ting] in the areas of banking law, commercial financial transactions, real estate, and general commercial litigation."

A-2946-24

Instead, defendants argued Jennings imposed an "implied duty" upon defendants to protect plaintiff from fraud in this loan transaction. This unsupported argument then spiraled into what seems akin to a summary judgment motion—asking the court to bar the report because there was appellate precedent rejecting such a duty.

A review of the complaint and Jennings' report reveals there was no explicit nor implied expression of a duty on defendants to protect plaintiff from fraud of another. The complaint is grounded in legal negligence; setting forth duties defendants should have performed in representing plaintiff in this transaction, the failure to do so constituted a breach of their duty, proximate cause and damages.

As to Jennings' report, there are six pages devoted to articulating the duties an attorney owes to a client-lender in a loan transaction as the requisite standard of care. Protecting the lender from fraud is not mentioned as one of the myriad of duties. The next four pages discuss defendants' breach of the standard of care. Again, there is no reference to fraud. In fact, the only mention of fraud in the twenty-two-page report is a discussion of defendants' prior application to the court to add DeMaio as a joint tortfeasor due to his fraudulent conduct. Jennings opined that DeMaio was not liable for defendants' malpractice. While

A-2946-24

defendants were free to challenge Jennings on this point, the statement did not attenuate to Jennings imposing a duty on defendants to protect plaintiff from fraud.

Many of defendants' arguments attack Jennings' opinions and conclusions as disputed by the record. However, differing contentions do not serve as a basis to strike an expert report. Such assertions address the weight to be given to the evidence rather than the admissibility of the report. See Townsend v. Pierre, 221 N.J. 36, 55 (finding because it is the responsibility of the jury to weigh admissible evidence, the court is tasked to ensure "an expert is not permitted to express speculative opinion . . . unfounded in the record."). In effect, defendants were arguing the merits of the case as if this was a summary judgment motion. The court sensed that as well and commented on the tenor of defendants' arguments several times, specifically stating many of the issues raised were all likely questions for a jury in light of the disputed facts and necessary credibility determinations.

Finally, Jennings never testified during his deposition that defendants owed a duty to plaintiff to protect it from fraud. Defendants examined Jennings at length regarding his opinions and conclusions and not once did Jennings voice

16

the opinion that the motion court attributed to him and later determined required the striking of the report and testimony.

For completeness, we must also note defendants' and the court's reliance on Grubbs to dismiss the complaint was misplaced. The issue in that case was whether the defendant real estate attorney could be held jointly and severally liable for all the plaintiff's compensatory damages, including attorney's fees. 376 N.J. Super. at 438. We stated:

> While it is true that a duty of protection is inherent in the duty that a real estate attorney owes to his clients, we are not persuaded that an attorney should be viewed as a "backstop" and held jointly and severally responsible for all damages in circumstances like these. Research has not disclosed any case law expressly condemning or endorsing the characterization of a lawyer as a "backstop" in a transactional setting or otherwise.
>
> [Id. at 439.]

Contrary to defendants' arguments throughout this litigation, we found an attorney had an "inherent" "duty of protection" to their clients. But they were not responsible in Grubbs for more than their allocated apportionment of damages. Grubbs was not pertinent to the circumstances presented here and in fact could be read favorably to plaintiff. However, as discussed above, Jennings never opined defendants owed plaintiff a duty of protection.

A-2946-24

Jennings' report comported with Rule 702. He did not opine as to any duty requiring a lender's attorney to protect their client from fraud. The court abused its discretion in striking the report and testimony and subsequently dismissing the complaint for lack of expert testimony and failing to reconsider its decision.

We reverse those orders. Defendants' arguments go towards the weight of the expert evidence. As the court articulated, the myriad of disputed issues of fact and determination of credibility of the parties' respective witnesses require and await consideration by a jury.

Reversed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Hanley

Clerk of the Appellate Division

A-2946-24